## Dull *versus* Bricker.

1. The acceptance of an order to pay money is an engagement by the acceptor to the payee or other holder to pay according to the tenor of the acceptance; it is not a suretyship to answer the debt or default of another.

2. The acceptor is a primary debtor: the Statute of Frauds does not require the acceptance to be in writing.

3. A rule of court was, "If the plaintiff's action be a general assumpsit, not founded on a writing, he shall, upon reasonable request, * * * file, together with his declaration, a written statement of the account or demand that he purposes to give in evidence, and rely on at the trial; and on failure so to do, no evidence thereof shall be received." The plaintiff's claim in his *narr.* was *general*, on defendant's parol acceptance of orders; some of the orders were in his possession; he requested a written statement of plaintiff's demand. The plaintiff not having given such statement, could not give the orders in evidence.

4. The orders being in defendant's possession, plaintiff was nevertheless required to give such description of them as would have enabled defendant to identify them.

5. The notice of the demand is to answer the purpose of a special count, and is to be treated as a substantive and material part of the proceedings.

6. Knowledge of the plaintiff's demand is not an equivalent for the statement required by the rule.

May 18th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Dauphin county:* No. 14, to May Term 1874.

This was an action of assumpsit, brought April 25th 1861, by James Bricker, for the use of Fink & Brother and Horner & Brother, against James J. Dull and Thomas Collins, partners under the name of Collins, Dull & Co. Service was made on Dull only. There was a return of "nihil" as to Collins.

The first count of the declaration, which was filed October 9th 1863, set out that during the years 1859 and 1860 the defendants were contractors with the Bedford Railroad Company for constructing their road: that Thomas Keating, Michael McCabe and John Drew were sub-contractors of the defendants, and the plaintiff was a merchant; that the said sub-contractors desiring to purchase goods from the plaintiff, he refused to furnish them with goods unless the defendants would agree, in consideration thereof, to pay for them out of moneys coming to the said sub-contractors from the defendants. The declaration averred that the defendants, in consideration that the plaintiff would furnish goods to the said sub-contractors, promised to pay for the goods out of moneys coming to them from the railroad company, on their estimates, as soon as the same should be received by the defendants and be due to the said sub-contractors, who agreed thereto. The declaration further averred that, in consideration of the promise, the plaintiff sold to the said sub-contractors goods of the value of $2500, and that the defendants had long since received said sum from the railroad com

[Dull *v.* Bricker.]

pany on the estimates of said sub-contractors. The second count was for $3000, money received by the defendants to the use of the plaintiff.

On the 24th of October 1873, Dull pleaded " Non assumpsit and payment with leave," &c.

The following are rules of the Court of Common Pleas of Dauphin county :—

" 67. Either party to an action may require in writing of the other party an exhibition of any paper or papers upon which the action is founded, or which is relied on as a defence, and to have copies thereof, if necessary, made at his own expense, within twenty days after such requisition; and upon the refusal of either party to make such exhibition, or permit such copies to be made, the same shall not be given in evidence on the trial.

" 68. If the plaintiff's action be a general assumpsit, not founded on a writing, he shall, upon reasonable request, before the defendant, be compelled to plead; or where a plea has been entered within twenty days after such request, file, together with his declaration, a written statement of the account or demand that he purposes to give in evidence, and rely on at the trial; and on failure so to do, no evidence thereof shall be received."

Under these rules the defendants gave these notices to the plaintiff's attorneys, each notice stating the action and dated January 2d 1864 :—

" Gentlemen : You are hereby notified and required to exhibit to the defendant, James J. Dull, within twenty days hereafter, any paper or papers upon which the above action is founded, and also allow him to have a copy or copies thereof, made at his own expense, as provided by the sixty-seventh rule of said court.

" Gentlemen : You are hereby requested to file in the above-stated case, within twenty days hereafter, a written statement of the account or demand it is purposed to give in evidence and rely on at the trial thereof, as provided by the sixty-eighth rule of said court."

On the 28th of January 1873, the death of James Bricker was suggested, Elizabeth A. Bricker and William H. Bricker, his administrators, substituted, and the case marked to the use of his estate.

The cause was tried May 6th 1873, before Pearson, P. J.

The plaintiff offered separately the following orders, produced by defendants on notice :—

" Section 5, Bedford Railroad.

" Messrs. Collins, Dull & Co.,

   " Please pay James Bricker one hundred dollars out of November estimate and oblige,  Yours,

 " $100.           Michael McCabe."

[Dull v. Bricker.]

"Section 6, Bedford Railroad.

"Messrs. Dull, Collins & Co.,

"Please pay J. Bricker three hundred and twenty-five dollars and two cents out of September, October and November estimates, and this shall be your receipt, and oblige,

"$325.02.                          THOMAS KEATING, Agent,
                                          for Thomas B. Keating."

To be followed with proof that the orders had been accepted and not been paid, and had been, since the bringing of the suit, in the hands of defendant.

Objected to, as coming within the Statute of Frauds, and because defendants had not been furnished with copies and statement of the demand under the 67th and 68th rules of court.

The offers were admitted and bills of exception sealed.

The plaintiffs offered the record of an attachment-execution, in Bedford county, to September Term 1861: Goldsmith v. Bricker & Drew; in which Collins & Dull were garnishees, and in which, in answer to interrogatories, the garnishees, as a defence, set out that this suit was pending in Dauphin county to recover the same money, and defeated the recovery there, by showing the suit was for the same debt as that sued on here.

Objected to, amongst other things, because copy, &c., was not furnished under the rules of court.

PER CURIAM.—"The object of both the rules of court was to give the parties litigant fair notice of the claims demanded. Where a party states in a controversy between others that he had full notice of the claim, we are unable to see what further notice is required."

The offer was admitted and a bill of exceptions sealed.

The answer of Dull to the second interrogatory was: "Dull, Collins & Co. had business transactions with John Drew, but not with James Bricker. John Drew was a sub-contractor under Dull, Collins & Co., on the Bedford Railroad. At the time of the service of the writ in the above case, and still, there is a balance on the books of Dull, Collins & Co., in favor of John Drew, of $1183.86; but it had previously been understood and agreed between Dull, Collins & Co., James Bricker and said John Drew, that said money should go and be paid to said Bricker in payment of the indebtedness of said Drew to said Bricker, and said Bricker, as said Dull, Collins & Co. have learned, before the service of the writ in this case, assigned and transferred said moneys to Fink & Brother and Horner & Brother, and the said last-named parties have a suit pending in Dauphin Common Pleas for the same against Dull, Collins & Co."

The plaintiff then gave evidence by John Fulton, engineer of the Bedford Railroad Company, that Keating's estimates for Sep-

26 P. F. SMITH—17

[Dull *v.* Bricker.]

tember, October and November were $861, and their final estimate was $2449.20, and that McCabe's November estimate was $136, and his final estimate $3319.32.

W. D. Shell, president of the railroad company, testified that the plaintiff sent him some orders on Collins & Dull to get their acceptance. Witness asked Dull. He said he would not accept them absolutely, only conditionally. He would pay them when he got the funds from the company and it was due to them (subcontractors) for work done. Bricker wanted the orders returned. Dull never returned them. Dull & Collins claimed more than their estimates and got it; they got bonds. The orders were to be paid when they realized the money on the bonds. Dull agreed to pay the orders out of the fund as presented, provided the money was then due them. An auditor was appointed, and all were paid as he reported. This payment was made in 1861.

There was evidence for the defendants that the whole amount due McCabe and Keating as sub-contractors had been paid to them on orders and in cash.

In the course of the trial there was other evidence for the purpose of showing an indebtedness from defendants to McCabe and Keating; the acceptance of the orders by defendants (claimed to be shown by letters from Dull, and from Collins to Bricker and otherwise); that they had funds in their hands belonging to the drawers; and that they had not been paid.

Also, other evidence by defendants in answer to the plaintiff's case.

The defendants submitted points which it is not necessary here to notice.

The court charged:— * * *

" The only two claims before you are the orders already recited.

[" We are asked by the defendants to instruct you that there can be no recovery on account of the failure to comply with the 67th and 68th rules of court, but decline so to do for these reasons: The evidence shows that the two orders were in the hands of the defendants, and produced by them on notice; therefore they could not require copies, nor ask to have them furnished. Whether a statement of the claims now demanded should have been furnished, is a question for you as well as for the court. There is no doubt a bill of particulars should be furnished on such a notice; but it is said the defendants well knew that these two orders were demanded, as appears from their answers as garnishees in the suit of Goldsmith *v.* Bricker & Drew, in the Common Pleas of Bedford county, in which they state that they were sued for this same claim of $325, for the use of Fink & Brother and Horner & Brothers, to whom the claim was then assigned. If from that answer put in as garnishees you are satisfied that they well knew this was the order in suit, they could scarcely require notice thereof under the

[Dull *v*. Bricker.]

rule of court. If that was left in doubt and uncertainty in their minds, notice should have been given.] It seems that these two assignees of the claim were afterwards satisfied in some way, and the money was coming to Bricker most probably, all of that is for the jury.

"There is another matter worthy of consideration. Although the defendants knew in 1861 that this was an item claimed, did they know that it was still claimed in 1864? You must be satisfied that such was the case, else there can be no recovery for want of notice of the items claimed. The $100 order given by Michael McCabe was probably never paid to him.. Did the defendants know that it was demanded in this suit? If they did not, there can be no recovery without notice. If they did know and understand that it was part of the claim, and they accepted the order, there can be a recovery of the amount with reasonable interest.

"Did the defendants accept these orders? It is very certain they did not to Mr. Schell, as the orders held by him were never given over, but retained by him, whilst these were in defendant's hands. Schell would not receive a conditional acceptance, and they would not give any other. Can you infer an acceptance from the lifting and retention of the orders, together with the letters which you will have out with you, and the answer of Mr. Dull as garnishee? In one of his letters he intimates that payment will be made if the sums are due to the contractors on their estimates being paid. You must endeavor to ascertain from the whole evidence, whether there was a promise to pay these two orders. If there was, the defendants are bound. If not, the plaintiff cannot recover.

["It is said there can be no recovery here under the Statute of Frauds, as it is the promise to pay the debt of another. As we understand this claim, it was a promise by defendants to pay their own debt. If they received the money of the contractors to pay over to their creditor, and accepted and lifted the order under an agreement to pay, it became their own debt—they owed the money.] * * *

"You must be satisfied from the evidence that the orders were accepted and agreed to be paid, else there can be no recovery.

"On the whole the case is not a little confused, and requires the careful consideration of the jury. You must judge whether any part of these orders have been paid or was included in any of the settlements. If not, and there was a promise to pay, the plaintiffs are entitled to recover." * * *

The verdict was for the plaintiff for $731.02.

The defendant Dull removed the record by writ of error to the Supreme Court.

He assigned for error :—

1, 2. Admitting the orders of McCabe and Keating in evidence.

5, 6. The parts of the charge in brackets.

[Dull *v.* Bricker.]

*B. J. Etter* and *F. Jordan,* for plaintiff in error.—The defendant had the right to know what was the character of the evidence to support the cause of action laid in the declaration, and the rules of court authorized him to require it to be furnished: Hale *v.* Fenn, 3 W. & S. 361; Gilpin *v.* Howell, 5 Barr 41. A bill of particulars precludes a party from giving evidence of any demand not stated in it: 2 Sanders' Pl. & Ev. 698, 699; Moatz *v.* Knox, 1 Jones 268; Covely *v.* Fox, Id. 171; Thomas *v.* Mann, 4 Casey 520. A defendant, by setting out in a plea of set-off the special matter of which he should give notice, cannot give other matter in evidence and is not entitled to a continuance: Wilson *v.* McClay, 14 S. & R. 176; Daniel *v.* Wilver, 12 Harris 516; Erwin *v.* Leibert, 5 W. & S. 103; McClurg *v.* Willard, 5 Watts 275. Notwithstanding the evidence offered to establish such matter, has been given on a former trial of the cause before arbitrators: Beyer *v.* Fenstermacher, 2 Whart. 95; Rentzheimer *v.* Bush, 2 Barr 88; Rodgers *v.* Kichline, 4 Casey 231.

Where the law requires a writing, the rights, and the persons by and to whom they are to be passed, must be defined in the writing with such degree of precision that one may, with reasonable certainty, apply it on knowing the circumstances of time and place: Miller *v.* Fichthorn, 7 Casey 252. And on this point see also Jack *v.* Morrison, 12 Wright 113; Maule *v.* Bucknell, 14 Id. 39.

*J. W. Simonton,* for defendants in error.—The court below is the proper interpreter of its own rules: Bigoney *v.* Stewart, 18 P. F. Smith 320; Coleman *v.* Nantz, 13 Id. 181; Frank *v.* Colhoun, 9 Id. 381; Wickersham *v.* Russell, 1 Id. 71. The rule was to prevent surprise, and was therefore of great aid to the routine of the business of the court, to which routine they alone apply: Magill's Appeal, 9 P. F. Smith 431. The acceptor of a bill is the primary debtor. The Statute of Frauds does not apply: Spaulding *v.* Andrews, 12 Wright 411.

Mr. Justice WILLIAMS delivered the opinion of the court, July 2d 1874.

The acceptance of an order for the payment of money imports an engagement on the part of the acceptor, to the payee or other legal holder, to pay it according to the tenor of the acceptance. It is in no sense a contract of suretyship or a promise to answer for the debt or default of another. The acceptor is a primary debtor, and the Statute of Frauds does not require the engagement to be in writing. The fact that the orders in question were verbally accepted, was, therefore, no valid objection to their admission in evidence. But were they admissible under the rules of court? The plaintiffs did not exhibit them to the defendants, nor file with their declaration a written statement of the demand that

[Dull *v.* Bricker.]

they purposed to give in evidence, in pursuance of the defendants' notices, as required by the rules. Why, then, should the orders have been admitted contrary to their express prohibition? If they were in the possession of the defendants, the plaintiffs were not bound to exhibit them, but they might have given such a description of them as would have enabled the defendants to identify them; and if they had done so, it would have been a substantial compliance with the rule. But the defendants' possession of the orders was no justification or excuse for not filing with their declaration a written statement of the demand which they proposed to give in evidence. It would be a narrow construction of the rule to hold, as the court below seems to have done, that the only purpose of the statement is to give notice of the plaintiff's demand. This is undoubtedly one of its objects, but it is also intended to answer the purpose of a special count, and in this respect it must be regarded as a substantive and material part of the pleadings. Knowledge of the plaintiff's demand, however, acquired by the defendants, is not an equivalent for the statement required by the rule. It was therefore error to admit the orders subject to the *instruction that if the defendants did not know that they were demanded* in this suit, there could be no recovery without notice under the rules of court. But if the defendants accepted the orders and knew that they were part of the plaintiff's claim, then notice under the rule was not necessary, and there could be a recovery of the amount with reasonable interest. This ruling opened the door to an inquiry which the defendants were not bound to come prepared to meet, and submitted the case to the jury upon an issue not raised by the pleadings. It subjected both parties to the hazard of a finding which might have done great injustice; and, though no such result may have followed the ruling in this case, to sanction it would be establishing a mischievous precedent. Whether the orders were admissible or not, was a question for the court, and not a mixed question of law and fact for the determination of the jury under the instructions of the court. And it is clear that under the rules they should not have been admitted.

There was no error in refusing to charge as requested in the defendants' points, and there is nothing in them that requires discussion.

Judgment reversed, and a *venire facias de novo* awarded.